UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-11905-RGS

SHANNON I. MCLAUGHLIN, et al.

v.

CHUCK HAGEL, et al.

MEMORANDUM AND ORDER ON PLAINTIFFS'
APPLICATION FOR AN AWARD
OF ATTORNEY'S FEES AND COSTS

December 17, 2013

STEARNS, D.J.

Plaintiffs, as the prevailing parties in this constitutional challenge to the application of Section 3 of the Defense of Marriage Act (DOMA),[1] 1 U.S.C. § 7, to same-sex military spouses, seek an award of attorney's fees pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. §§ 2412(a)(1) & (d), in the amount of $170,229 (plus costs of $350). Under the EAJA, the United States is not liable for attorney's fees if its litigating position was "substantially justified . . . to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 564-565 (1988).

---

[1] Section 3 of DOMA applied to definitions of marriage in Title 10, Title 32, and Title 38 of the United States Code as they affected active service members, veterans, and their spouses. I will use Section 3 in its collective sense as referring to all relevant applications of DOMA in this litigation.

Some background is in order. Plaintiffs filed this lawsuit on October 27, 2011. Eight months earlier, President Obama had determined that classifications based on sexual orientation were subject to a heightened standard of scrutiny that DOMA could not meet with respect to legally-married, same-sex couples. As a consequence, he ordered the Department of Justice to cease its legal defense of equal protection challenges to Section 3. However, in deference to the Congress, the President also instructed the Executive Branch to continue to enforce Section 3 pending its possible repeal by Congress or a definitive verdict from the judicial branch.

Before this ligation was meaningfully joined, at the parties' request, the court entered a stay in deference to two cases then pending in the First Circuit involving similar challenges to Section 3 of DOMA. On May 31, 2012, the First Circuit ruled Section 3 unconstitutional, but withheld the issuance of its mandate given the "highly likely" imminent review of DOMA by the United States Supreme Court. *See Massachusetts v. HHS*, 682 F.3d 1, 17 (1st Cir. 2012). In conformity with the First Circuit's decision, this court continued the stay of the instant ligation (over plaintiffs' objection). On June 26, 2013, the Supreme Court decided *United States v. Windsor*, 133 S. Ct. 2675 (2013), by a 5-to-4 vote, the majority of Justices holding Section 3 of DOMA unconstitutional under the Equal Protection Clause of the Fifth Amendment.

This court immediately responded with an Order to the parties to show cause why, in light of *Windsor,* judgment should not enter for plaintiffs. On October 2, 2013, the court adopted and entered the parties' proposed form of final judgment declaring DOMA unconstitutional as applied to plaintiffs.

The sole issue in determining whether plaintiffs are entitled to an award of attorney's fees is whether the government has met its burden of showing that its litigating position that, in deference to Congress, it would continue to enforce Section 3 of DOMA until the courts (or Congress itself) had definitively spoken, while in the interim conceding the unconstitutionality of Section 3, lacked substantial justification. To answer this question, the court need go no further than the *Windsor* decision itself. As the High Court recognized, the approach taken by the President of preserving the justiciability of Section 3 of DOMA by continuing to enforce it despite a personal belief that the statute was unconstitutional, paid the appropriate respect to the primacy of the Supreme Court in matters of constitutional interpretation. As the Court stated in echoing *Marbury v. Madison*'s seminal definition of the separation-of-powers,

> if the Executive's agreement with a plaintiff that a law is unconstitutional is enough to preclude judicial review, then the Supreme Court's primary role in determining the constitutionality of a law that has inflicted real injury on a plaintiff who has brought a justiciable legal claim would become only secondary to the President's. This would undermine the clear dictate of the separation-of-powers principle that "when an Act of Congress is

alleged to conflict with the Constitution, '[i]t is emphatically the province and duty of the judicial department to say what the law is.'"

*Windsor*, 133 S. Ct. at 2688-2689 (internal citations omitted).

The issue is not dissimilar from the controversy over the self-asserted right of Presidents on signing Congressional enactments to declare which portions of the law they will or will not personally enforce.[2] The practice led the American Bar Association to declare its opposition "as contrary to the rule of law and our constitutional system of separation of powers, a President's issuance of signing statements to claim the authority or state the intention to disregard or decline to enforce all or part of the law he has signed, or to interpret such a law in a manner inconsistent with the clear intent of Congress . . . ." Am. Bar Ass'n, Report of the Task Force on Presidential Signing Statements and the Separation of Powers Doctrine 1 (2006). It is not that the President could not have ended all enforcement of Section 3 by executive fiat – the government is careful to make the point that it was among his prerogatives to do so – the issue is whether under the circumstances to do so

---

[2] In their reply brief, plaintiffs point to a President Bush-era defense of signing statements offered to Congress by Deputy Assistant Attorney General John P. Elwood as supporting their argument that President Obama acted unreasonably in enforcing DOMA despite his personal conviction that the statute was unconstitutional.

would have been constitutionally reasonable. It is clear from *Windsor* that the Supreme Court would have thought not.

In sum, this court would be loath to deem unjustified by any substantial measure a litigating position that has its roots in the very fundamentals of our constitutional form of government.[3]

ORDER

For the foregoing reasons, the application for an award of attorney's fees is <u>DENIED</u>.[4]

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE

---

[3] The reasonableness of the President's litigating decision is further underscored by the fact that four Justices in *Windsor* would have found Section 3 of DOMA constitutional. Had the President taken the contrary course, and had the Court ruled differently (assuming a finding of justiciability), the decision would have wreaked havoc on many more lives than did the relatively brief delay in the plaintiffs' obtaining a full vindication of their rights.

[4] Given the court's determination that a fee award is not justified under the EAJA's "substantially justified" test, it is unnecessary for the court to address the government's arguments that special circumstances would render an award in this case unjust or, alternatively, that the number of hours billed by plaintiffs' attorneys in the fee petition is grossly excessive.